IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DRUMMOND, | ) | CASE NO. 1:16-CV-734 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE CHRISTOPHER BOYKO |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| CHARLOTTE JENKINS, | ) | JONATHAN D. GREENBERG |
| Warden | ) | |
| | ) | ORDER |
| Respondent. | ) | (Doc. No. 30.) |

This matter is before the magistrate judge pursuant to Local Rule 72.2. Before the Court is the Petition of John Drummond ("Drummond" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Currently pending is Drummond's second "Motion to Stay Briefing and to Hold Case in Abeyance." (Doc. No. 30.) Respondent filed a Brief in Opposition (Doc. No. 33). For the following reasons, Drummond's motion is DENIED.

**I.   Summary of Facts**

Drummond's habeas petition challenges the constitutionality of his conviction and sentence for aggravated murder in the case of *State v. Drummond*, Ashtabula County Court of Common Pleas Case No. 2013 CR 0068. The state appellate court summarized the facts underlying Drummond's conviction as follows:

> {¶ 2} This incident occurred in February 1997. It remained a cold case for almost 16 years. Appellant was ultimately indicted by the Ashtabula County Grand Jury on January 31, 2013 on four counts: count one, aggravated murder, an unclassified felony, in violation of R.C. 2903.01(A);

count two, aggravated murder, an unclassified felony, in violation of R.C. 2903.01(B); count three, kidnapping, a felony of the first degree, in violation of R.C. 2905.01(A)(3); and count four, felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2). All four counts contained firearm specifications. Appellant pleaded not guilty to all charges.

{¶ 3} Appellant filed a motion to dismiss count four, felonious assault, because it exceeded the six year statute of limitations under R.C. 2901.13(A)(1)(a). Appellee, the state of Ohio, agreed. The trial court granted appellant's motion and dismissed count four. Appellant later filed another motion to dismiss based upon pre-indictment delay. The state disagreed maintaining that appellant did not suffer actual prejudice. Following a hearing, the trial court denied appellant's motion.

{¶ 4} A jury trial commenced on August 21, 2013. The main crux of the case centered around the following question: Who was responsible for firing the fatal shots on the night at issue? The answer to this question was based upon testimony which was not available to the state at the time the crime was committed. The main witnesses against appellant were his co-defendants. Their testimony did not become available until years later.

{¶ 5} Thirteen witnesses testified for the state. They collectively established that appellant travelled from Youngstown to Ashtabula with Jones, Jawann Evans, and Eric Weaver after learning that $10,000 was stolen from Jones. The men suspected that either the victim [Ronald Maceo Hull] or Damon Young committed the theft.

{¶ 6} After locating the victim at the West 38th Street apartments, the victim was beaten, pistol-whipped, shot in the buttocks, and fatally shot with a 9mm handgun. The evidence presented included a total of four weapons: (1) a .40 caliber handgun (possessed by Young); (2) a .357 caliber handgun, which was broken (possessed by George "Lenny" Church); (3) a 9mm handgun, which was different than the one that killed the victim (possessed by Evans and shot into the victim's buttocks by Evans); and (4) a 9mm handgun, which killed the victim (possessed by appellant). Appellant was standing over the victim when the victim was fatally shot. The following additional details were adduced at trial:

{¶ 7} On the night of the incident, Lisa Harris was at the West 38th Street apartments babysitting for the children of her niece, Saudi Payne. Payne was dating Jones at the time. Jones had left $10,000 in Payne's apartment. Harris testified she saw Jones, Evans, Church, Stephen Boles, and the victim inside Payne's apartment. Harris stated the victim walked past her with his head down and did not speak to her even though she was friendly with him.

{¶ 8} Monique Robinson lived next door to Payne and was first cousins with the victim. Robinson testified that on the night in question, Payne told her that someone had stolen Jones' money from Payne's apartment. And Payne believed the victim committed the theft. Robinson attempted to call the victim after Church and Boles asked her if she knew his whereabouts. She was unable to reach him. Payne later informed Boles and Church that $10,000 of Jones' money was stolen; she also informed the men of her suspicion that the victim took the money. Boles and Church began searching for the victim. After no success, the two men returned to Payne's apartment.

{¶ 9} The victim ultimately showed up at the apartment on his own and denied taking Jones' money. When Robinson looked inside Payne's apartment, she saw Payne and Boles. Robinson additionally observed Jones standing over the victim demanding to know where his money was. Robinson further witnessed appellant and Evans arrive at the apartment. Both men were holding guns. She also observed Church, who was brandishing a firearm, as well as the victim, who was sitting in a chair. At that time, the door closed and Robinson heard a gunshot.

{¶ 10} Inside the apartment, Jones confronted the victim, demanded his money, hit the victim, and shot a gun into the floor. Church testified that Jones was screaming at the victim about the stolen money and a shot was fired inside the apartment. Church saw Jones with a gun after he heard the shot ring out. Church also saw Jones fire a shot into the ground inside the apartment. The victim claimed he did not steal Jones' money and that, instead, the men should look for Young.

{¶ 11} Boles and Church subsequently went looking for Young while the others stayed with the victim. The two men found Young and brought him back to the apartment. An argument ensued between Young and the victim regarding who had stolen the money. During the argument, a shot was fired and the victim was shot in the buttocks. Boles observed Evans brandishing his firearm. The men then took the victim and Young outside where they argued with each other over who had stolen the money. Young and Church struck the victim. Church, Evans, Weaver, Jones, and appellant then proceeded to beat the victim. During the fight, Church struck the victim with a revolver. The blow broke the gun open.

{¶ 12} After the beating, everyone, with the exception of appellant, walked away from the victim. Church heard a shot. He turned around and observed the victim on the ground with his arm raised and appellant standing over him. Church then heard two more shots. Church stated appellant was in possession of a 9mm handgun. Church stated the last person he saw near

3

the victim was appellant.

{¶ 13} Boles, who was a friend of the victim, subsequently disguised his voice and called the police. Boles did not want any of the men, including appellant, to know he had made the call because he feared that they might kill him. Boles stated that their group of friends had rules, which included severe repercussions for "snitching," including death. Also, Church indicated that one of the rules of "the group" was that no one was allowed to steal from any other member or cooperate in any manner with the police.

{¶ 14} Renee Powell was the victim's girlfriend. Powell testified she had plans to meet the victim at Sardi's Bar, a local establishment. Powell was waiting for the victim at the bar when she heard the news that he had been killed. She later found him lying dead in front of the apartment building. Powell stated she saw Boles, who appeared visibly upset.

{¶ 15} Young testified he was home with his girlfriend when Boles and Church located him. Boles and Church advised Young that he had to go with them. Young felt like he had no choice but to comply. At Payne's apartment, Young saw appellant with a 9mm handgun. Young said some other men also had guns and they were all accusing him and the victim of taking Jones' money. Young testified that all of the co-defendants, including appellant, were working as a group. According to Young, Church informed the group that they would take Young and the victim to the freeway and kill them. Young was afraid of all the men, including appellant, and believed he was going to be killed.

{¶ 16} According to Young, as the men exited the apartment, the victim accused Young of committing a different robbery and the two men began fighting. During the altercation, Young heard Evans say something about the stolen money and then a gunshot went off. Young saw that the victim had been shot. Young indicated that Weaver and Church began to pistol whip him as well as the victim. Church's gun broke during the pistol whipping.

{¶ 17} Young stated that Church pulled him to a car while the victim remained on the ground. Young then heard multiple gunshots. Young saw Church, Evans, and appellant run towards the front of the apartment building. Young testified appellant was in closest proximity to the victim. Young ran away from the scene and returned to his home. Young talked with the police two weeks after the murder and again in 2003 and 2006.

{¶ 18} Following the incident, Patrolman William Parkomaki and Sergeant

Rick Featsent with the Ashtabula City Police Department ("ACPD") received a dispatch that shots had been fired in the West 38th Street area. Patrolman Parkomaki found the victim outside the apartment building near some bushes. He then radioed for back-up assistance.

{¶ 19} Detective James Oatman, of the ACPD, executed a search warrant at the apartment where the victim was taken and held prior to his murder. Various items were collected, including a piece of carpet with a blood spot, a stocking cap, a shell casing, and a bullet slug fired into the floor. Detective Oatman videotaped and photographed a walkthrough of the apartment. David Clemens was the evidence officer with the ACPD. Clemens testified that when he retired in 2003, all the evidence in the case, which included the foregoing items, was stored in an evidence room.

{¶ 20} Detective George Taylor Cleveland joined the ACPD two years after this incident occurred. He took over the cold case investigation after the lead detective, Robert Pouska retired. Detective Cleveland re-interviewed witnesses and tried to locate new ones. He later joined the Ashtabula County Sheriff's Department ("ACSD"), but kept working on this case. Detective Cleveland testified that all blood evidence collected had been tested by the Cuyahoga County Coroner's Office ("CCCO"). In the early 2000s, he was unsuccessful in uncovering any new evidence.

{¶ 21} In 2008, Detective Cleveland opened up the investigation again. A cigarette butt from the scene was re-tested. It had two different profiles on it. One belonged to the victim and the other to Tracey Trent, a person with no connection to the murder. The bullets from the victim's body and the shell casings from the scene were also tested. The slugs from the body were determined to be 9mm; two of the bullets were fired from the same weapon, and the third from a different weapon. The slug from the floor of the apartment was also tested.

{¶ 22} The testing revealed that four weapons of three different calibers were involved in this crime. They included the two 9mm handguns involved in shooting the victim, the .357 live round from the ground, and the .40 caliber from the apartment floor. **Detective Cleveland testified, however, that the following evidence was no longer in law enforcement's custody: the piece of carpet; the .40 caliber slug; blood swabs from the grass, sidewalk, and screen door; the spent 9mm shell casings; control swabs; various photographs of the crime scene; the slugs from the victim's body; and the cigarette.**

{¶ 23} Dr. Cristen Rolf performed the autopsy on the victim in February 1997. Dr. Rolf testified that the victim sustained injuries to his body that

5

> were consistent with a person that had been beaten in a fight. He suffered a
> blunt injury to the back of his head. The victim also suffered multiple
> gunshot wounds to his left arm/hand, neck, and both hips. The fatal wound
> was to the neck area.
>
> {¶ 24} Appellant presented one witness. Dr. Nasir Butt was the DNA
> technical manager with the CCCO at the time the items were tested. Dr.
> Butt performed a DNA analysis of the cigarette butt which, as stated, had a
> major and minor contributor mixture. The major contributor was consistent
> with the victim. The minor contributor came back to Trent. Dr. Butt
> testified that the blood on the cigarette came from the victim and that Trent's
> DNA was found on the filter because Trent was the one that had smoked the
> cigarette.
>
> {¶ 25} Following trial, the jury found appellant guilty on the second count
> of aggravated murder involving the commission of a felony, the count of
> kidnapping, and the firearm specifications. The jury, however, found
> appellant not guilty on the first count of aggravated murder involving prior
> calculation and design. On August 30, 2013, the trial court sentenced
> appellant to life in prison with the possibility of parole after 23 years.

*State v. Drummond*, 31 N.E.3d (Ohio App. 11th Dist. March 16, 2015) (emphasis added).

## II. Procedural History

### A. State Court Proceedings

As noted above, the January 2013 session of the Ashtabula County Grand Jury issued an indictment charging Drummond with two counts of aggravated murder in violation of Ohio Rev. Code § 2903.01; one count of kidnapping in violation of Ohio Rev. Code § 2905.01(A)(3); and one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2). (Doc. No. 16-1, Exh. 1.) Each charge carried two firearm specifications. (*Id*.) Drummond entered a plea of not guilty. (Doc. No. 16-1, Exh. 2.)

On April 4, 2013, Drummond filed a motion to dismiss the felonious assault charge as barred by the statute of limitations. (Doc. No. 16-1, Exh. 3.) The State did not oppose the motion. (Doc. No. 16-1, Exh. 5.) On May 1, 2013, the trial court granted the motion. (Doc. No. 16-1,

Exh. 7.)

On April 12, 2013, Drummond filed a motion to dismiss due to pre-indictment delay, which the State opposed. (Doc. No. 16-1, Exhs. 4, 6.) The trial court ordered additional briefing. (Doc. No. 16-1, Exh. 7-9.) Following a hearing, the trial court denied the motion. (Doc. No. 16-1, Exh. 10.)

On August 28, 2013, after a four day jury trial, Drummond was found not guilty of aggravated murder in Count 1; guilty of aggravated murder in Count 2 and the attached firearm specifications; and guilty of kidnapping in Count 3 and the attached firearm specifications. (Doc. No. 16-1, Exh. 15.) The trial court merged Counts 2 and 3 and the attached specifications for sentencing. (Doc. No. 16-1, Exh. 16.) The court then proceeded on Count 2, and imposed a sentence of life with parole eligibility after 20 years. (*Id.*) The court also imposed three years of incarceration for the firearm specification, to be served consecutively with the sentence in Count 2. (*Id.*)

On September 23, 2013, Drummond, through new counsel, filed a notice of appeal to the Eleventh District Court of Appeals of Ohio ("state appellate court"). (Doc. No. 16-1, Exh. 17.) In his merit brief, Drummond raised the following four assignments of error:

    I.      The trial court erred by failing to dismiss the indictment for pre-indictment delay.

    II.     The evidence is insufficient to sustain a conviction for Aggravated Murder pursuant to R.C. 2903.01(B).

    III.    The trial court erred by failing to properly instruct the jury as to the spoilation of the evidence.

    IV.    The conviction is against the manifest weight of the evidence.

(Doc. No. 16-1, Exh. 18.) The state appellate court affirmed Drummond's conviction and

sentence on March 16, 2015. *State v. Drummond*, 31 N.E.3d 1216 (Ohio App. 11th Dist. March 16, 2015). *See also* Doc. No. 16-1, Exh. 20.

On May 4, 2015, Drummond, through counsel, filed an untimely notice of appeal and motion for leave to file delayed appeal to the Supreme Court of Ohio. (Doc. No. 16-1, Exhs. 21, 22.) In his motion for leave, Drummond explained that he failed to timely appeal the state appellate court's decision for the following reason:

> No appointment was made to appeal this matter to this Court. The appellant was unable to pay the filing fee or Mr. Drummond's Memorandum in Support to this Court. Drummond attempted to obtain funding for this appeal but was unable to do so.
>
> Counsel received funding for the filing fee from Mr. Drummond on this date, April 29, 2015. Counsel has agreed to represent Drummond on a pro bono basis.

(Doc. No. 16-1, Exh. 22.)

On June 24, 2015, the Supreme Court of Ohio denied Drummond's motion for leave to file a delayed appeal and dismissed the case. (Doc. No. 16-1, Exh. 23.)

Thereafter, on June 5, 2015, the state appellate court issued a judgment entry *sua sponte* striking the 21st page of their opinion and substituting an attached 21st page. (Doc. No. 16-1, Exh. 24.) Thereafter, on June 23, 2015, Drummond, through counsel, filed a notice of appeal from the June 5, 2015 judgment entry to the Ohio Supreme Court. (Doc. No. 16-1, Exh. 25.) In his Memorandum in Support of Jurisdiction, Drummond raised the following three Propositions of Law:

> I. A sixteen year delay between the commission of the offense and the indictment being filed constitutes a violation of a defendant's right to due process protections if the delay results in the loss of substantial evidence and the justification for the delay is merely that the defendant is not prejudiced.

> II. If a defendant is charged with the commission of a homicide during his participation in a kidnapping, and the evidence fails to establish beyond a reasonable doubt that the defendant was guilty of the underlying kidnapping, the principle charge of murder must be dismissed.
>
> III. If the defendant has established a substantial prejudice from the unexplained loss of essential evidence, the trial court must instruct the jury that it may take an negative inference from the fact that the evidence in question was mishandled.

(Doc. No. 16-1, Exh. 26.) On December 16, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac. R. 7.08(B)(4). (Doc. No. 16-1, Exh. 27.)

Meanwhile, the state court docket reflects that, on August 5, 2015, Drummond (through counsel) filed a "Motion for the State to Disclose Rediscovered Evidence" in the state trial court. On September 9, 2015, the trial court issued a Judgment Entry as follows: "Upon written motion of the Defendant John Drummond, and for good cause shown, it is hereby ordered that Detective Taylor Cleveland of the Ashtabula County Sheriff's Department is to provide to counsel for Defendant a copy of the disc which contains the inventory and photographs of the rediscovery evidence in the above-captioned matter."

Nearly a year later, on October 3, 2016, Drummond filed a *pro se* "Motion to be Appointed Counsel to Handle Newly Rediscovered Evidence" in the state trial court. *See* Docket for *State v. Drummond*, Ashtabula Court of Common Pleas Case No. 2013 CR 00068. Drummond's motion was granted the same day, and attorney Marie Lane was appointed to represent Drummond "in any post conviction matters involving the captioned case." *Id*. Two weeks later, Drummond filed a motion objecting to the appointment of Ms. Lane. *Id*. That motion remains pending.

There are no other docket entries on the state trial court docket as of the date of this Order.

### B. Proceedings in this Court

On March 24, 2016, Drummond filed the instant Petition, raising the following four grounds for relief:

**GROUND ONE**: Did a sixteen year delay between the commission of the offense and the indictment being filed constitute a violation of appellant's right to due process protections when the delay resulted in the loss of substantial evidence and the justification for the delay by the state was merely that the defendant was not prejudiced?

**Supporting Facts**: The actions that formed the basis of the indictment occurred on February 8 or 9, 1997. The indictment was handed down almost 16 years later on January 31, 2013. The delay substantially prejudiced Drummond. Forensic evidence was lost. Drummond was unable to independently test such evidence. Statements of witnesses were lost, preventing impeachment of witnesses or follow-up investigation from that statement. Witnesses died in the interim period. The state failed to adequately justify the delay. This period of pre-indictment delay violated Drummond's federal and state due process protections.

**GROUND TWO**: If a defendant is convicted of the commission of a homicide during his participation in a kidnapping, if the evidence fails to establish beyond a reasonable doubt that the defendant was guilty of the underlying kidnapping, must the conviction of murder be dismissed?

**Supporting Facts**: The state failed to prove that Drummond was guilty of aiding and abetting in the commission of a kidnapping. The evidence, viewed in a light most favorable to the state, established only his mere presence at the apartment where the victim, Maceo Hull, was confronted on the theft allegation. Drummond did not transport Hull to the location. Hull had arrived voluntarily. It was not Drummond's money that had been stolen. Drummond did not live in the apartment. Drummond did not say anything to Hull when in the apartment. Drummond did not strike Hull in the apartment. The evidence shows that George "Lenny" Church and Troy Jones, the victim of the theft, orchestrated the confrontation. Drummond had arrived at the apartment after attending a concert. He had no idea of any theft until arriving. His mere presence in the apartment, albeit with a gun, is insufficient to establish his guilt for a kidnapping.

**GROUND THREE**: Where the defendant has established substantial prejudice from the unexplained loss of essential evidence, must the trial court instruct the jury that it may make a negative inference from the fact that the evidence in question was mishandled?

> **Supporting Facts**: Prior to the court's instructions to the jury, Drummond requested that the court instruct the jury that it could take a negative inference from the spoliation of the loss of evidence in this case. This request was rejected by the court. The state did not question the potential usefulness of the lost or destroyed evidence but it is impossible to prove how exculpatory it would be to a jury. If an independent ballistics expert examined the bullet casings and portions, would it have proven Drummond did not shoot Hull, or that the same gun fired all the shots? Drummond requested an instruction that the jury could draw an adverse inference on the lost or destroyed evidence but the trial court denied the request.
>
> **GROUND FOUR**: If a criminal case is brought sixteen years after the offense, considerable evidence is lost, witnesses have died, the testimony of the prosecution witnesses are inconsistent with each other and they all were provided with plea deals, was the conviction against the manifest weight of the evidence?
>
> **Supporting Facts**: None of the state's witnesses supplied a motive for the Petitioner to kill the victim. The state witness testimony at best, puts the Petitioner near the victim at the time of the shooting. The state's witnesses all were offered generous plea deals in exchange for the testimony and are therefore not credible.

(Doc. No. 1.) On that same date, Drummond filed a motion for appointment of counsel (Doc. No. 3), which the Court denied. (Doc. No. 7.) Drummond thereafter filed a motion for reconsideration, which was also denied. (Doc. Nos. 9, 12.) On May 16, 2016, Drummond filed an Objection to the denial of his motion for appointment of counsel, which was denied by District Judge Christopher Boyko. (Doc. Nos. 13, 27.)

Respondent filed the Return on June 29, 2016. (Doc. No. 16.) On August 19, 2016, Drummond filed a "Motion to Stay Briefing and Hold Case in Abeyance," arguing a stay was required because of the recent discovery of certain "lost evidence." (Doc. No. 23.) Respondent filed a brief in opposition on August 31, 2016, to which Drummond replied. (Doc. Nos. 24, 25.) On September 15, 2016, this Court issued an Order denying Drummond's motion. (Doc. No. 28.)

After receiving an extension of time, Drummond filed his Traverse on October 24, 2016. (Doc. No. 31.) On that same date, Drummond filed his second "Motion to Stay and Hold in Case

11

in Abeyance." (Doc. No. 30.) Respondent filed a Brief in Opposition to Drummond's Motion on November 14, 2016, as well as a Sur-Reply to the Traverse. (Doc. Nos. 33, 34.)

**II.      Legal Standard**

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted his state remedies. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all of the petitioner's claims. *See Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990). A federal district court may not adjudicate a "mixed petition," i.e., one that contains both exhausted and unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982). Further, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244, limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus to one year from "the date on which the judgment became final or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1).

In *Rhines v. Weber*, 544 U.S. 269, 275 (2005), the Supreme Court recognized that, "as a result of the interplay between" AEDPA's one-year statute of limitations and the total exhaustion requirement of *Lundy*, "petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims. If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses

it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review." Accordingly, the Court determined that, in the case of a mixed petition, a district court has the discretion to employ a "stay and abeyance" procedure:

> Under this procedure, rather than dismiss the mixed petition. . . a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court.

*Id.* at 275-76.

The Court cautioned that "stay and abeyance should be available only in limited circumstances," because it "has the potential to undermine . . . AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings." *Id.* at 277. Accordingly, the Court determined that stay and abeyance is appropriate only where the petitioner can show: (1) good cause for his failure to exhaust; (2) that his unexhausted claims are not "plainly meritless"; and (3) that there is no indication that the petitioner engaged in "intentionally dilatory litigation tactics." *Id*. at 277-78; *see also Wagner v. Smith*, 581 F.3d 410, 419 (6th Cir. 2009). Generally, to show good cause for a failure to exhaust state remedies, a petitioner must show why he failed to use available state remedies timely and appropriately. *See, e.g., Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011) (finding, in the context of procedural default, that the state's concealment of relevant facts, resulting in a failure to raise a claim within the relevant time period, was relevant to showing good cause for a failure to exhaust); *Hodge v. Haeberlin*, 579 F.3d 627 (6th Cir. 2009) (finding a lack of due diligence in discovering relevant facts was relevant to good cause for a failure to timely exhaust claims). Further, in *Rhines*, the Supreme Court opined that a stay should be entered if the unexhausted claim was "potentially

13

meritorious." 544 U.S. at 278.

**III. Analysis**

As noted above, Drummond has twice moved this Court to stay the instant habeas proceedings. In his first *pro se* Motion to Stay (filed in August 2016), Drummond requested a stay "due to being made aware of the so-called lost evidence from trial that supposed to have been lost in a flood." (Doc. No. 23 at 1.) He stated this evidence "relates to [B]rady material because [it] is from evidence stored and collected from 1997." (*Id.*) Drummond noted, however, that "the most important evidence that is still missing are the videotaped statements from 2003 . . .without these 2003 statements I am unable to impeach those that testified truthfully at trial." (*Id.*)

Respondent opposed Drummond's motion on three grounds. First, Respondent argued a stay was not warranted because "Drummond does not indicate he is seeking to exhaust one of the four grounds for relief in the instant habeas petition" and "this Court does not have the power to grant a stay to exhaust claims that are not presently before this Court." (Doc. No. 24 at 2-3.) Second, Respondent asserted "the purpose of the stay is not clear" because "a review of the docket sheets for Drummond's criminal case does not indicate that any postconviction or other collateral review actions have been filed." (*Id.* at 3.) Third, Respondent argued a stay should not be granted because "Drummond does not state that any of the misplaced evidence that was recently located is helpful to his case." (*Id.*)

On September 15, 2016, this Court issued an Order denying Drummond's motion, as follows:

> [T[he stay and abeyance procedure outlined in *Rhines* applies to "mixed petitions," i.e., petitions that raise both exhausted and unexhausted claims. *See Rhines*, 544 U.S. 269, 275. Here, although Drummond argues generally that his habeas claims are not exhausted, he does not identify any particular claim as

14

> unexhausted or explain why he believes such claim requires further exhaustion. The Court notes that, in his Petition, Drummond expressly avers that "all grounds for relief that [he] has raised in this petition [have] been presented to the highest state court having jurisdiction." (Doc. No. 1 at 12.) * * * As the instant Petition does not appear to assert any unexhausted claims, the Court finds it is not a "mixed petition" and, therefore, the stay and abeyance procedure is not available to him. *See e.g., Holt v. Lafler,* 2010 WL 3341515 at * 3 (W.D. Mich. Aug. 23, 2010) (where both of petitioner's habeas claims were exhausted, court held that "petitioner cannot utilize the stay and abeyance procedure because he did not file a 'mixed' habeas petition.")
>
> Moreover, Drummond has not clearly articulated the relevance of the "lost evidence" to any of his pending habeas claims. Drummond appears to argue that the "lost evidence" is relevant to a *Brady* claim and/or a claim that Detective Cleveland gave false statements to the grand jury. (Doc. No. 23 at 1; Doc. No. 25 at 1.) However, Drummond's petition does not raise either of these claims. Absent a "mixed petition," the Court will not grant a stay to allow Drummond to exhaust claims that are not asserted in the petition. *See Moore v. Wilson*, 2008 WL 2556669 at * 2 (N.D. Ohio June 20, 2008) (denying motion for stay where none of the petitioner's habeas claims before the Court were unexhausted and the petitioner "does not claim that he returns to state court to exhaust a claim currently before this Court"); *Stedman v. Hurley*, 2006 WL 2864319 at *8 (N.D. Ohio 2006) ("Because his petition is not a mixed petition, the court cannot stay the exhausted claims pending the resolution of the unexhausted claim [raised in state court and not in the habeas petition]."); *Holt,* 2010 WL 3341515 at * 3 (same). *See also Gatlin v. Clipper*, 2014 WL 2743208 at * 5 (N.D. Ohio June 17, 2014) ("Even assuming Petitioner has filed a post judgment motion in state court presenting a new claim, having an independent proceeding pending in state court does not render a federal habeas petition a 'mixed' petition"); *Bowling v. Haeberline*, 246 Fed. Appx. 303, 306 (6th Cir. 2007); *Casey v. Hall*, 2009 WL 2167927 *3 (N.D. Ohio July 17, 2009).

(Doc. No. 28 at 15-17.) The Court also noted Drummond did not have any post-conviction or other collateral action pending in the state courts relating to the "lost evidence." (*Id*. at fn 1). The Court remarked as follows: "The state court docket does reflect that Drummond's attorney filed a motion in August 2015 asking the trial court to require the State to disclose 'rediscovered evidence.' This motion was granted by the state trial court via judgment entry entered September 9, 2015. It appears, then, that Drummond (through counsel) has been in possession

of the 'rediscovered evidence' for one year and, yet, has not filed any motions in state court for relief relating to such evidence." (*Id.*)

Drummond does not adequately address any of these issues in his second Motion to Stay, which was filed on October 24, 2016 and is currently pending before the Court. (Doc. No. 30.) Drummond states generally that his Petition contains "unexhausted claims," but again fails explain how any of the four specific claims raised in his Petition are subject to further exhaustion.[1] Moreover, Drummond again fails to articulate the relevance of the rediscovered evidence to any of his pending habeas claims. Notably, the state court docket continues to reflect that no post-conviction motions have been filed in the state trial court regarding this evidence, despite the fact it was provided to Drummond in September 2015 and counsel was appointed by the state court in October 2016. For these reasons, the Court finds Drummond has failed to demonstrate that stay and abeyance is appropriate with regard to any of the four habeas claims set forth in his Petition.

Drummond, however, also seeks to amend his Petition to assert new claims, arguing as

---

[1] The record reflects Drummond's first three habeas claims were raised on direct appeal to the state appellate court and on appeal to the Supreme Court of Ohio after the state appellate court issued its corrected opinion. (Doc. No. 16-1, Exhs. 18, 26.) Drummond's fourth habeas claim asserts his conviction was against the manifest weight of the evidence (Doc. No. 1.) This claim was raised on direct appeal to the state appellate court, but it does not appear to have been raised in Drummond's subsequent appeal to the Supreme Court of Ohio after the issuance of the state appellate court corrected opinion. Drummond, however, does not identify any procedural mechanism under state law that would allow him to now raise his manifest weight of the evidence claim in state court. Even aside from this issue, the Court notes a claim that a conviction is against the manifest weight of the evidence rests solely on state law and is not a cognizable claim on habeas review. *See e.g. Norton v. Sloan,* 2017 WL 525561 at * 4 (N.D. Ohio Feb. 9, 2017); *Swain v. Lazaroff*, 2016 WL 6605140 at * 15 (N.D. Ohio May 23, 2016); *Glenn v. Bunting*, 2015 WL 1843054 at * 8 (N.D. Ohio April 22, 2015).

follows:

> Also, Drummond seeks to amend his petition due to rediscovered evidence, a claim that involves *Brady* issues that are essential to the petition, along with an issue of ineffective assistance of counsel pertaining to ballistics. these same ballistics was told to the grand jury two years after states conviction against Drummond has been found. . . . Drummond seeks to raise a tainted juror claim in his amended petition as well. All of these claims require further development.
>
>  \* \* \*
>
> I object to this unjust verdict, I do not agree with this unjust verdict, and I do not accept his unjust verdict & wrongful conviction. The jury clearly lost their way with this verdict. Therefore, a petitioner's claim, which is here based upon *Brady* information and ineffective assistance of counsel, may yet be exhausted if the state will provide a remedy for the habeas petitioner to pursue, thus providing the state courts an opportunity to correct a constitutionally infirm state court conviction. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Drummond's state claims are meritorious. Drummond again argues that his first two claims of relief that the petitioner's due process protection under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Napue v. Illinois*, 360 U.S. 264 (1959), *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed.2d 791 (1935) & *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d were violated. The rediscovered catalog sheet is all that I have. I've never had any other information other than this and far as I know no further action has been taking pertaining to this issue at hand. For these reasons, it is requested that this court stay and abey the proceedings so that the petitioner may exhaust his claims in the state court. Once exhausted, it will be requested that Drummond be permitted to amend his petition.

(Doc. No. 30 at 1, 3.)

In her Brief in Opposition, Respondent argues Drummond's request to amend his petition should be denied because he "failed to present his claims with any specificity." (Doc. No. 33 at 2.) She further asserts amendment of the Petition is not warranted because "any amendment to assert Brady or ballistics claims related to the rediscovered evidence would be meritless." (*Id*. at 3.) In this regard, Respondent emphasizes Drummond's failure to explain how any of the rediscovered evidence is helpful to his case. Finally, Respondent cites case law for the proposition that "an amended habeas petition . . . does not relate back (and thereby

17

escape AEDPA's one year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644 (2005). Respondent argues there is "little doubt that new grounds for relief are time-barred especially where Drummond does not argue that the rediscovered evidence is helpful to his case." (Doc. No. 33 at 4.)

It is well established that Rule 15 of the Federal Rules of Civil Procedure applies to a habeas petitioner's request for leave to amend his petition. *Mayle v. Felix*, 545 U.S. 644, 655 (2005). *See also Glenn v. Coleman*, 2014 WL 4983661 at * 5 (N.D. Ohio Oct. 6, 2014); *Shank v. Mitchell*, 2013 WL 3208554 at *3 (S.D. Ohio June 24, 2013). Under Rule 15(a), a party may amend his or her pleadings once as a matter of course within 21 days after service or, if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a). Otherwise, the party may amend only with the opposing party's written consent or by leave of court, which "the court should freely give . . when justice so requires." *Id. See also Mayle*, 545 U.S. at 655.

As Respondent has already filed her Return of Writ, leave of court must be obtained before Drummond may amend his Petition. In determining whether leave should be granted, a habeas court should consider several factors, including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir.1998) (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994.)) *See also Powers v. Beightler*, 2010 WL 649623 at * 1 (N.D. Ohio Feb. 19, 2010). If a proposed amendment lacks merit on its face, it is deemed futile. *See e.g., Moss v. United States*,

323 F.3d 445, 475 (6th Cir. 2003). In the Sixth Circuit, leave to amend a pleading may be denied on grounds of futility only if the amended pleading would not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Kottmyer v. Maas*, 436 F.3d 684, 691–92 (6th Cir. 2006); *Hall v. Clipper*, 2011 WL 2671310 at * 11 (N.D. Ohio July 8, 2011)

Drummond's request to amend his petition is denied for the following reasons. First, Drummond has failed to adequately articulate the additional claims he wishes to raise. In his Motion, Drummond alludes to (1) "a claim that involves *Brady* issues that are essential this petition," (2) "an issue of ineffective assistance of counsel pertaining to ballistics," and (3) a tainted juror claim. (Doc. No. 30 at 1.) Drummond's description fails to adequately articulate the specific bases of his proposed claims and is simply too vague to warrant amendment of the Petition, particularly at this late stage in the proceedings. Under these circumstances, the Court finds allowing Drummond to amend the Petition to include these ill-defined claims would cause undue prejudice to Respondent, who would no doubt find it very difficult to frame a response.

The Court also finds amendment of the Petition is unwarranted because Drummond again fails to adequately explain how any of the rediscovered evidence supports his proposed claims. As noted above, the state court docket reflects Drummond was provided a copy of the rediscovered evidence over 18 months ago, in September 2015. Despite having had ample opportunity to review and examine this evidence, Drummond has yet to offer any clear explanation of how the rediscovered evidence would support either a *Brady*, ineffective assistance of trial counsel, or tainted juror claim. Moreover, despite having had this evidence since September 2015 and appointed counsel for purposes of post-conviction proceedings since October 2016, the state court docket reflects there is still no post-conviction petition or other

19

motion relating to this rediscovered evidence currently pending before the state trial court.

Accordingly, and for all the reasons set forth above, the Court denies Drummond's request to amend the Petition to raise any of the proposed claims alluded to in his Motion to Stay. Further, the Court declines to stay and abey these proceedings to allow Drummond to exhaust potential claims relating to the rediscovered evidence, as such claims are not expressly raised in the Petition. *See e.g., Ramallo v. Miller*, 2016 WL 8609958 at * 12 (N.D. Ohio Sept. 26, 2016) ("In fact, this Court has declined to stay habeas proceedings where a petitioner seeks to exhaust claims not expressly raised in the Petition"). *See also Sands v. Bunting*, 3:14cv1960 (N.D. Ohio) (Doc. No. 10) (same); *Vasquez v. Moore*, Case No. 3:13CV2820 (N.D. Ohio) (Doc. No. 10) (same).

## IV. Conclusion

For all the reasons set forth above, Drummond's motion for stay and abeyance and request for leave to amend the Petition (Doc. No. 30) is DENIED. The Court points out, however, that this Order does not in any way limit Drummond's ability to pursue any state court remedies that may be available to him independent of his habeas petition.

**IT IS SO ORDERED.**

Date: June 19, 2017        *s/ Jonathan D. Greenberg*
       Jonathan D. Greenberg
       United States Magistrate Judge