**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN DRUMMOND,** | ) | **CASE NO. 1:16CV734** |
| | ) | |
| Petitioner, | ) | |
| | ) | **JUDGE CHRISTOPHER BOYKO** |
| v. | ) | |
| | ) | **MAGISTRATE JUDGE** |
| **CHARLOTTE JENKINS,** | ) | **JONATHAN D. GREENBERG** |
| Warden | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the undersigned pursuant to Local Rule 72.2.  Before the Court is

the Petition of John Drummond ("Drummond" or "Petitioner"), for a Writ of Habeas Corpus

filed pursuant to 28 U.S.C. § 2254.  Drummond is in the custody of the Ohio Department of

Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v.

Drummond*, Ashtabula County Court of Common Pleas, Case No. 2013-CR-068.  For the

following reasons, the undersigned recommends that the Petition be DISMISSED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct unless rebutted

by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Drummond's conviction as follows:

> {¶ 1} Appellant, John E. Drummond, appeals from the judgment of the Ashtabula County Court of Common Pleas, convicting him of aggravated murder for the fatal shooting of Ronald Maceo Hull ("the victim"). The victim was targeted due to his suspected involvement in the theft of $10,000 from appellant's friend, Troy Jones. Appellant traveled with Jones from Youngstown to Ashtabula to retrieve Jones' money from the victim. Appellant had a 9mm handgun in his possession. The evidence presented placed appellant, along with various others, at the scene of the crime. The victim was beaten and ultimately killed by a 9mm handgun. Appellant was observed standing nearest to and leaning over the victim when the fatal shots were fired. For the reasons that follow, we affirm.

> {¶ 2} This incident occurred in February 1997.  It remained a cold case for almost 16 years.  Appellant was ultimately indicted by the Ashtabula County Grand Jury on January 31, 2013 on four counts: count one, aggravated murder, an unclassified felony, in violation of R.C. 2903.01(A); count two, aggravated murder, an unclassified felony, in violation of R.C. 2903.01(B); count three, kidnapping, a felony of the first degree, in violation of R.C. 2905.01(A)(3); and count four, felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2). All four counts contained firearm specifications. Appellant pleaded not guilty to all charges.

> {¶ 3} Appellant filed a motion to dismiss count four, felonious assault, because it exceeded the six year statute of limitations under R.C. 2901.13(A)(1)(a).  Appellee, the state of Ohio, agreed.  The trial court granted appellant's motion and dismissed count four.   Appellant later filed another motion to dismiss based upon pre-indictment delay.  The state disagreed maintaining that appellant did not suffer actual prejudice. Following a hearing, the trial court denied appellant's motion.

> {¶ 4} A jury trial commenced on August 21, 2013. The main crux of the case centered around the following question: Who was responsible for firing the fatal shots on the night at issue?  The answer to this question was based upon testimony which was not available to the state at the time the crime was committed. The main witnesses against appellant were his co-defendants.  Their testimony did not become available until years later.

> {¶ 5} Thirteen witnesses testified for the state. They collectively established that appellant travelled from Youngstown to Ashtabula with Jones, Jawann Evans, and Eric Weaver after learning that $10,000 was stolen from Jones. The men suspected that either the victim [Ronald Maceo Hull] or Damon Young committed the theft.

2

{¶ 6} After locating the victim at the West 38th Street apartments, the victim was beaten, pistol-whipped, shot in the buttocks, and fatally shot with a 9mm handgun. The evidence presented included a total of four weapons: (1) a .40 caliber handgun (possessed by Young); (2) a .357 caliber handgun, which was broken (possessed by George "Lenny" Church); (3) a 9mm handgun, which was different than the one that killed the victim (possessed by Evans and shot into the victim's buttocks by Evans); and (4) a 9mm handgun, which killed the victim (possessed by appellant). Appellant was standing over the victim when the victim was fatally shot. The following additional details were adduced at trial:

{¶ 7} On the night of the incident, Lisa Harris was at the West 38th Street apartments babysitting for the children of her niece, Saudi Payne. Payne was dating Jones at the time. Jones had left $10,000 in Payne's apartment. Harris testified she saw Jones, Evans, Church, Stephen Boles, and the victim inside Payne's apartment. Harris stated the victim walked past her with his head down and did not speak to her even though she was friendly with him.

{¶ 8} Monique Robinson lived next door to Payne and was first cousins with the victim. Robinson testified that on the night in question, Payne told her that someone had stolen Jones' money from Payne's apartment. And Payne believed the victim committed the theft. Robinson attempted to call the victim after Church and Boles asked her if she knew his whereabouts. She was unable to reach him. Payne later informed Boles and Church that $10,000 of Jones' money was stolen; she also informed the men of her suspicion that the victim took the money. Boles and Church began searching for the victim. After no success, the two men returned to Payne's apartment.

{¶ 9} The victim ultimately showed up at the apartment on his own and denied taking Jones' money. When Robinson looked inside Payne's apartment, she saw Payne and Boles. Robinson additionally observed Jones standing over the victim demanding to know where his money was. Robinson further witnessed appellant and Evans arrive at the apartment. Both men were holding guns. She also observed Church, who was brandishing a firearm, as well as the victim, who was sitting in a chair. At that time, the door closed and Robinson heard a gunshot.

{¶ 10} Inside the apartment, Jones confronted the victim, demanded his money, hit the victim, and shot a gun into the floor. Church testified that Jones was screaming at the victim about the stolen money and a shot was fired inside the apartment. Church saw Jones with a gun after he heard the shot ring out. Church also saw Jones fire a shot into the ground inside the apartment. The victim claimed he did not steal Jones' money and that, instead, the men should look for Young.

{¶ 11} Boles and Church subsequently went looking for Young while the others stayed with the victim. The two men found Young and brought him back to the

3

apartment.  An argument ensued between Young and the victim regarding who had stolen the money.  During the argument, a shot was fired and the victim was shot in the buttocks.  Boles observed Evans brandishing his firearm.  The men then took the victim and Young outside where they argued with each other over who had stolen the money.  Young and Church struck the victim.  Church, Evans, Weaver, Jones, and appellant then proceeded to beat the victim.  During the fight, Church struck the victim with a revolver.  The blow broke the gun open.

{¶ 12} After the beating, everyone, with the exception of appellant, walked away from the victim.  Church heard a shot.  He turned around and observed the victim on the ground with his arm raised and appellant standing over him.  Church then heard two more shots.  Church stated appellant was in possession of a 9mm handgun.  Church stated the last person he saw near the victim was appellant.

{¶ 13} Boles, who was a friend of the victim, subsequently disguised his voice and called the police.  Boles did not want any of the men, including appellant, to know he had made the call because he feared that they might kill him.  Boles stated that their group of friends had rules, which included severe repercussions for "snitching," including death.  Also, Church indicated that one of the rules of "the group" was that no one was allowed to steal from any other member or cooperate in any manner with the police.

{¶ 14} Renee Powell was the victim's girlfriend.  Powell testified she had plans to meet the victim at Sardi's Bar, a local establishment.  Powell was waiting for the victim at the bar when she heard the news that he had been killed.  She later found him lying dead in front of the apartment building.  Powell stated she saw Boles, who appeared visibly upset.

{¶ 15} Young testified he was home with his girlfriend when Boles and Church located him.  Boles and Church advised Young that he had to go with them.  Young felt like he had no choice but to comply.  At Payne's apartment, Young saw appellant with a 9mm handgun.  Young said some other men also had guns and they were all accusing him and the victim of taking Jones' money.  Young testified that all of the co-defendants, including appellant, were working as a group.  According to Young, Church informed the group that they would take Young and the victim to the freeway and kill them.  Young was afraid of all the men, including appellant, and believed he was going to be killed.

{¶ 16} According to Young, as the men exited the apartment, the victim accused Young of committing a different robbery and the two men began fighting.  During the altercation, Young heard Evans say something about the stolen money and then a gunshot went off.  Young saw that the victim had been shot.  Young indicated that Weaver and Church began to pistol whip him as well as the victim.  Church's gun broke during the pistol whipping.

4

{¶ 17} Young stated that Church pulled him to a car while the victim remained on the ground.  Young then heard multiple gunshots.  Young saw Church, Evans, and appellant run towards the front of the apartment building.  Young testified appellant was in closest proximity to the victim. Young ran away from the scene and returned to his home.  Young talked with the police two weeks after the murder and again in 2003 and 2006.

{¶ 18} Following the incident, Patrolman William Parkomaki and Sergeant Rick Featsent with the Ashtabula City Police Department ("ACPD") received a dispatch that shots had been fired in the West 38th Street area. Patrolman Parkomaki found the victim outside the apartment building near some bushes.  He then radioed for back-up assistance.

{¶ 19} Detective James Oatman, of the ACPD, executed a search warrant at the apartment where the victim was taken and held prior to his murder. Various items were collected, including a piece of carpet with a blood spot, a stocking cap, a shell casing, and a bullet slug fired into the floor.  Detective Oatman videotaped and photographed a walkthrough of the apartment.  David Clemens was the evidence officer with the ACPD. Clemens testified that when he retired in 2003, all the evidence in the case, which included the foregoing items, was stored in an evidence room.

{¶ 20} Detective George Taylor Cleveland joined the ACPD two years after this incident occurred.  He took over the cold case investigation after the lead detective, Robert Pouska retired.  Detective Cleveland re-interviewed witnesses and tried to locate new ones.  He later joined the Ashtabula County Sheriff's Department ("ACSD"), but kept working on this case. Detective Cleveland testified that all blood evidence collected had been tested by the Cuyahoga County Coroner's Office ("CCCO").  In the early 2000s, he was unsuccessful in uncovering any new evidence.

{¶ 21} In 2008, Detective Cleveland opened up the investigation again.  A cigarette butt from the scene was re-tested.  It had two different profiles on it. One belonged to the victim and the other to Tracey Trent, a person with no connection to the murder.  The bullets from the victim's body and the shell casings from the scene were also tested.  The slugs from the body were determined to be 9mm; two of the bullets were fired from the same weapon, and the third from a different weapon.  The slug from the floor of the apartment was also tested.

{¶ 22} The testing revealed that four weapons of three different calibers were involved in this crime.  They included the two 9mm handguns involved in shooting the victim, the .357 live round from the ground, and the .40 caliber from the apartment floor.  **Detective Cleveland testified, however, that the following**

5

**evidence was no longer in law enforcement's custody: the piece of carpet; the .40 caliber slug; blood swabs from the grass, sidewalk, and screen door; the spent 9mm shell casings; control swabs; various photographs of the crime scene; the slugs from the victim's body; and the cigarette.**

{¶ 23} Dr. Cristen Rolf performed the autopsy on the victim in February 1997. Dr. Rolf testified that the victim sustained injuries to his body that were consistent with a person that had been beaten in a fight. He suffered a blunt injury to the back of his head. The victim also suffered multiple gunshot wounds to his left arm/hand, neck, and both hips. The fatal wound was to the neck area.

{¶ 24} Appellant presented one witness. Dr. Nasir Butt was the DNA technical manager with the CCCO at the time the items were tested. Dr. Butt performed a DNA analysis of the cigarette butt which, as stated, had a major and minor contributor mixture. The major contributor was consistent with the victim. The minor contributor came back to Trent. Dr. Butt testified that the blood on the cigarette came from the victim and that Trent's DNA was found on the filter because Trent was the one that had smoked the cigarette.

{¶ 25} Following trial, the jury found appellant guilty on the second count of aggravated murder involving the commission of a felony, the count of kidnapping, and the firearm specifications. The jury, however, found appellant not guilty on the first count of aggravated murder involving prior calculation and design. On August 30, 2013, the trial court sentenced appellant to life in prison with the possibility of parole after 23 years.

*State v. Drummond*, 31 N.E.3d (Ohio App. 11th Dist. March 16, 2015) (emphasis added).

## II. Procedural History

### A.   Trial Court Proceedings

As noted above, the January 2013 session of the Ashtabula County Grand Jury issued an indictment charging Drummond with two counts of aggravated murder in violation of Ohio Rev. Code § 2903.01; one count of kidnapping in violation of Ohio Rev. Code § 2905.01(A)(3); and one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2). (Doc. No. 16-1, Exh. 1.) Each charge carried two firearm specifications. (*Id.*) Drummond entered a plea of not guilty. (Doc. No. 16-1, Exh. 2.)

On April 4, 2013, Drummond filed a motion to dismiss the felonious assault charge as barred by the statute of limitations.  (Doc. No. 16-1, Exh. 3.)  The State did not oppose the motion.  (Doc. No. 16-1, Exh. 5.)  On May 1, 2013, the trial court granted the motion.  (Doc. No. 16-1, Exh. 7.)

On April 12, 2013, Drummond filed a motion to dismiss due to pre-indictment delay, which the State opposed.  (Doc. No. 16-1, Exhs. 4, 6.)  The trial court ordered additional briefing.  (Doc. No. 16-1, Exh. 7-9.)  Following a hearing, the trial court denied the motion, finding Drummond had failed to demonstrate actual prejudice because "[t]he most compelling evidence in this case is not the forensic evidence but the testimony of witnesses to the murder of Ronald Hull, all of whom are still alive."[1]  (Doc. No. 16-1, Exh. 10.)

On August 28, 2013, after a four day jury trial, Drummond was found not guilty of aggravated murder in Count 1; guilty of aggravated murder in Count 2 and the attached firearm specifications; and guilty of kidnapping in Count 3 and the attached firearm specifications.  (Doc. No. 16-1, Exh. 15.)  The trial court merged Counts 2 and 3 and the attached specifications for sentencing.  (Doc. No. 16-1, Exh. 16.)  The court then proceeded on Count 2, and imposed a sentence of life with parole eligibility after 20 years.  (*Id*.)  The court also imposed three years of incarceration for the firearm specification, to be served consecutively with the sentence in Count 2.  (*Id*.)

**B.** **Direct Appeal**

On September 23, 2013, Drummond, through new counsel, filed a notice of appeal to the

---

[1]  The record reflects Drummond later filed a second motion to dismiss for pre-indictment delay on August 8, 2013, to which the State responded.  (Doc. No. 16-1 at Exhs. 13, 14; Doc. No. 22.)

Eleventh District Court of Appeals of Ohio ("state appellate court").  (Doc. No. 16-1, Exh. 17.)

In his merit brief, Drummond raised the following four assignments of error:

> I.      The trial court erred by failing to dismiss the indictment for pre-
>         indictment delay.
>
> II.     The evidence is insufficient to sustain a conviction for Aggravated Murder
>         pursuant to R.C. 2903.01(B).
>
> III.    The trial court erred by failing to properly instruct the jury as to the
>         spoilation of the evidence.
>
> IV.     The conviction is against the weight of the evidence.

(Doc. No. 16-1, Exh. 18.)  The state appellate court affirmed Drummond's conviction and

sentence on March 16, 2015.  *State v. Drummond*, 31 N.E.3d 1216 (Ohio App. 11th Dist. March

16, 2015).  *See also* Doc. No. 16-1, Exh. 20.

On May 4, 2015, Drummond, through counsel, filed an untimely notice of appeal and

motion for leave to file delayed appeal to the Supreme Court of Ohio.  (Doc. No. 16-1, Exhs. 21,

22.)  In his motion for leave, Drummond explained that he failed to timely appeal the state

appellate court's decision for the following reason:

> No appointment was made to appeal this matter to this Court.  The appellant was
> unable to pay the filing fee or Mr. Drummond's Memorandum in Support to this
> Court.  Drummond attempted to obtain funding for this appeal but was unable to
> do so.
>
> Counsel received funding for the filing fee from Mr. Drummond on this date,
> April 29, 2015.  Counsel has agreed to represent Drummond on a pro bono basis.

(Doc. No. 16-1, Exh. 22.)

On June 5, 2015, the state appellate court issued a judgment entry *sua sponte* striking the

21st page of its March 16, 2015 opinion and substituting an attached 21st page.  (Doc. No. 16-1,

Exh. 24.)  This judgment entry explained as follows:

8

> Pursuant to an inadvertent error in this court's 21st page of the opinion of March 16, 2015, it is ordered *sua sponte* that the 21st page of the opinion of March 16, 2015 be stricken and held for naught. It is further ordered *sua sponte* that the attached 21st page of the opinion be entered for the stricken 21st page of the opinion. The Clerk of Courts is instructed to strike the 21st page of the opinion of March 16, 2015 and substitute the attached 21st page of the opinion.

(*Id.*) The record reflects no substantive change was made to the opinion. Rather, the substituted 21st page merely removed a case citation. (Compare Doc. No. 16-1, Exh. 20 at PageID#269 with Doc. No. 16-1, Exh. 24 at PageID# 321.)

Thereafter, on June 23, 2015, Drummond, through counsel, filed a notice of appeal from the June 5, 2015 judgment entry to the Ohio Supreme Court. (Doc. No. 16-1, Exh. 25.) In his Memorandum in Support of Jurisdiction, Drummond raised the following three Propositions of Law:

I.    A sixteen year delay between the commission of the offense and the indictment being filed constitutes a violation of a defendant's right to due process protections if the delay results in the loss of substantial evidence and the justification for the delay is merely that the defendant is not prejudiced.

II.   If a defendant is charged with the commission of a homicide during his participation in a kidnapping, and the evidence fails to establish beyond a reasonable doubt that the defendant was guilty of the underlying kidnapping, the principle charge of murder must be dismissed.

III.  If the defendant has established a substantial prejudice from the unexplained loss of essential evidence, the trial court must instruct the jury that it may take an negative inference from the fact that the evidence in question was mishandled.

(Doc. No. 16-1, Exh. 26.)

On June 24, 2015, the Supreme Court of Ohio denied Drummond's motion for leave to file a delayed appeal from the state appellate court's original March 16, 2015 opinion, and dismissed the case. (Doc. No. 16-1, Exh. 23.)

9

Several months later, on December 16, 2015, pursuant to S.Ct. Prac. R. 7.08(B)(4), the Supreme Court of Ohio declined to accept jurisdiction of Drummond's appeal from the state appellate court judgment entry substituting the 21st page of the March 2015 opinion.  (Doc. No. 16-1, Exh. 27.)

**C.**     **Post-Conviction Filings**

Meanwhile, the state court docket reflects that, on August 5, 2015, Drummond (through counsel) filed a "Motion for the State to Disclose Rediscovered Evidence" in the state trial court. On September 9, 2015, the trial court issued a Judgment Entry as follows: "Upon written motion of the Defendant John Drummond, and for good cause shown, it is hereby ordered that Detective Taylor Cleveland of the Ashtabula County Sheriff's Department is to provide to counsel for Defendant a copy of the disc which contains the inventory and photographs of the rediscovery evidence in the above-captioned matter."  *See* Docket for *State v. Drummond*, Ashtabula Court of Common Pleas Case No. 2013 CR 00068.

Nearly a year later, on October 3, 2016, Drummond filed a *pro se* "Motion to be Appointed Counsel to Handle Newly Rediscovered Evidence" in the state trial court.  *See* Docket for *State v. Drummond*, Ashtabula Court of Common Pleas Case No. 2013 CR 00068. Drummond's motion was granted the same day, and attorney Marie Lane was appointed to represent Drummond "in any post conviction matters involving the captioned case."  *Id*.  Two weeks later, Drummond filed a motion objecting to the appointment of Ms. Lane.  *Id*.  That motion remains pending.  The docket also reflects Drummond filed several letters to the state trial court requesting copies of records, "discovery," and evidence, in July, October, and December 2017.  *Id*.

10

There are no other docket entries on the state trial court docket as of the date of this Order.

**D.     Federal Habeas Petition**

On March 14, 2016,[2] Drummond filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**: Did a sixteen year delay between the commission of the offense and the indictment being filed constitute a violation of appellant's right to due process protections when the delay resulted in the loss of substantial evidence and the justification for the delay by the state was merely that the defendant was not prejudiced?
>
> **Supporting Facts**:  The actions that formed the basis of the indictment occurred on February 8 or 9, 1997. The indictment was handed down almost 16 years later on January 31, 2013. The delay substantially prejudiced Drummond. Forensic evidence was lost. Drummond was unable to independently test such evidence. Statements of witnesses were lost, preventing impeachment of witnesses or follow-up investigation from that statement. Witnesses died in the interim period. The state failed to adequately justify the delay. This period of pre-indictment delay violated Drummond's federal and state due process protections.
>
> **GROUND TWO**: If a defendant is convicted of the commission of a homicide during his participation in a kidnapping, if the evidence fails to establish beyond a reasonable doubt that the defendant was guilty of the underlying kidnapping, must the conviction of murder be dismissed?
>
> **Supporting Facts**: The state failed to prove that Drummond was guilty of aiding and abetting in the commission of a kidnapping. The evidence, viewed in a light most favorable to the state, established only his mere presence at the apartment where the victim, Maceo Hull, was confronted on the theft allegation. Drummond did not transport Hull to the location. Hull had arrived voluntarily. It was not Drummond's money that had been stolen. Drummond did not live in the apartment. Drummond did not say anything to Hull when in the apartment.

---

[2]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until March 24, 2016, Drummond states he placed it in the prison mailing system on March 14, 2016.  (Doc. No. 1 at 15.)  Thus, the Court will consider the Petition as filed on March 14, 2016.

Drummond did not strike Hull in the apartment. The evidence shows that George "Lenny" Church and Troy Jones, the victim of the theft, orchestrated the confrontation. Drummond had arrived at the apartment after attending a concert. He had no idea of any theft until arriving. His mere presence in the apartment, albeit with a gun, is insufficient to establish his guilt for a kidnapping.

**GROUND THREE**: Where the defendant has established substantial prejudice from the unexplained loss of essential evidence, must the trial court instruct the jury that it may make a negative inference from the fact that the evidence in question was mishandled?

**Supporting Facts**: Prior to the court's instructions to the jury, Drummond requested that the court instruct the jury that it could take a negative inference from the spoliation of the loss of evidence in this case. This request was rejected by the court. The state did not question the potential usefulness of the lost or destroyed evidence but it is impossible to prove how exculpatory it would be to a jury. If an independent ballistics expert examined the bullet casings and portions, would it have proven Drummond did not shoot Hull, or that the same gun fired all the shots? Drummond requested an instruction that the jury could draw an adverse inference on the lost or destroyed evidence but the trial court denied the request.

**GROUND FOUR**: If a criminal case is brought sixteen years after the offense, considerable evidence is lost, witnesses have died, the testimony of the prosecution witnesses are inconsistent with each other and they all were provided with plea deals, was the conviction against the manifest weight of the evidence?

**Supporting Facts**: None of the state's witnesses supplied a motive for the Petitioner to kill the victim. The state witness testimony at best, puts the Petitioner near the victim at the time of the shooting. The state's witnesses all were offered generous plea deals in exchange for the testimony and are therefore not credible.

(Doc. No. 1.)  On that same date, Drummond filed a motion for appointment of counsel (Doc. No. 3), which the Court denied.  (Doc. No. 7.)  Drummond thereafter filed a motion for reconsideration, which was also denied.  (Doc. Nos. 9, 12.)  On May 16, 2016, Drummond filed an Objection to the denial of his motion for appointment of counsel, which was denied by District Judge Christopher Boyko.  (Doc. Nos. 13, 27.)

Respondent filed the Return on June 29, 2016.  (Doc. No. 16.)  On August 19, 2016,

Drummond filed a "Motion to Stay Briefing and Hold Case in Abeyance," arguing a stay was required because of the recent discovery of certain "lost evidence." (Doc. No. 23.) Respondent filed a brief in opposition on August 31, 2016, to which Drummond replied. (Doc. Nos. 24, 25.) On September 15, 2016, this Court issued an Order denying Drummond's motion. (Doc. No. 28.)

After receiving an extension of time, Drummond filed his Traverse on October 24, 2016. (Doc. No. 31.) On that same date, Drummond filed his second "Motion to Stay and Hold in Case in Abeyance." (Doc. No. 30.) Therein, Drummond not only sought a stay and abeyance of the instant case, but also requested the Court allow him to amend his Petition to add several new claims. (*Id*.) Respondent filed a Brief in Opposition to Drummond's Motion on November 14, 2016, as well as a Sur-Reply to the Traverse. (Doc. Nos. 33, 34.)

On June 19, 2017, the undersigned issued an Order denying Drummond's motion to stay the instant proceedings. (Doc. No. 35.) In addition, the undersigned denied Drummond's request to amend his petition, explaining as follows:

> Drummond's request to amend his petition is denied for the following reasons. First, Drummond has failed to adequately articulate the additional claims he wishes to raise. In his Motion, Drummond alludes to (1) "a claim that involves Brady issues that are essential this petition," (2) "an issue of ineffective assistance of counsel pertaining to ballistics," and (3) a tainted juror claim. (Doc. No. 30 at 1.) Drummond's description fails to adequately articulate the specific bases of his proposed claims and is simply too vague to warrant amendment of the Petition, particularly at this late stage in the proceedings. Under these circumstances, the Court finds allowing Drummond to amend the Petition to include these ill-defined claims would cause undue prejudice to Respondent, who would no doubt find it very difficult to frame a response.
>
> The Court also finds amendment of the Petition is unwarranted because Drummond again fails to adequately explain how any of the rediscovered evidence supports his proposed claims. As noted above, the state court docket reflects Drummond was provided a copy of the rediscovered evidence over 18 months ago, in

13

September 2015. Despite having had ample opportunity to review and examine this evidence, Drummond has yet to offer any clear explanation of how the rediscovered evidence would support either a Brady, ineffective assistance of trial counsel, or tainted juror claim. Moreover, despite having had this evidence since September 2015 and appointed counsel for purposes of post-conviction proceedings since October 2016, the state court docket reflects there is still no post-conviction petition or other motion relating to this rediscovered evidence currently pending before the state trial court.

Accordingly, and for all the reasons set forth above, the Court denies Drummond's request to amend the Petition to raise any of the proposed claims alluded to in his Motion to Stay.

(*Id*. at 19-20.)  Drummond filed an Objection to the above Order on July 24, 2017.  (Doc. No. 37.)  That Objection remains pending as of the date of this Order.

Also on July 24, 2017, and despite the fact the undersigned denied leave to amend the Petition, Drummond filed an "Amended Petition/Traverse" in which he seeks to raise seven new claims.  (Doc. No. 38.)  On August 7, 2017, Respondent filed a brief in opposition to Drummond's "Amended Petition/Traverse."  (Doc. No. 39.)  Nearly four months later, on December 1, 2017, Drummond filed a response.  (Doc. No. 40.)

### III. Motion to Amend Petition

As noted above, on July 24, 2017, Drummond filed an "Amended Petition/Traverse" in which he seeks to raise the following seven new claims:

1.      **Ineffective trial counsel consisting of a tainted juror**

**SUPPORTING FACTS**:  [L.W.] juror# 8 is of african american decent [sic].  She was one of only two prospective jurors of african american decent [sic] out of 75 prospective jurors. Disproportionate in it's essence of racial disparity. [L.W.] (voir dire, pg 37 come on up. Q: And you are [L.W.], can you stand over here so people don't read your lips. Well, I mean, that's what they try to do. You're acquainted to who? A: The Hull family, I also knew Ronald Hull. (The court) that's the name of the victim in this case. Juror [L.W.] (yeah. Well, he goes by maceo.)is "friends of the family"of the decedent. She also stated that she works with "nicole boles" who is related to stephon boles. * * *   I told trial counsel that I wanted to excuse said juror

14

[L.W.] because of her ties to the Hull family & for working with stephon boles relative. I'm the party of this suit, as it turned out I did not have any say so in matters pertaining to me, my defense, my innocence until proven otherwise. This jury(pool)process  was one sided. * * *

(voir dire, pgs 65-66, juror [S.E.]) prosector p. scarsella ask juror [S.E.] Q: you understand that we're here to judge a case based only what you hear in the courtroom? juror #9  A: correct. Q: is that something that you would be able to do? Juror.9 A: I "believe"so. Q: do you think it would be hard? A:yes. Q: why? A:(juror) There's "a lot of media, outside opinions". Conclusion, out of 75 potential jurors, 35 of these jurors spoke about reading the case online or in the Star Beacon newspaper. These jurors more than likely knew someone that was involved in this case or was familiar with the case. When potential jurors said that they were requested for the four others that were charged with this same crime, this jury pooling should have went out to people that were not already called for the other case's. Because now they're interested and already have formed opinions as most jurors stated.([S.E.] sat as a juror throughout trial)

2.      **Ineffective trial counsel, refusal to subpoena witnesses**

SUPPORTING FACTS: [T]his could never be a trial tactic or strategy when it's not the counsel or attorney on trial. These two witnesses and one confidential source gave statements that they saw george church(at first, suspect, then turned paid witness) kill decedent which could have raised reasonable doubt or a not guilty verdict through church's own admission in recorded phone calls from Ashtabula county jail. He stated, I viewed evans discovery packet & lewis mann & keith mann wrote statements both saying they saw him (church) shooting at Hull(decedent). Not subpoenaing these witnesses completely prejudiced defendant.

3.      **[T]rial counsel refused to file [the following] four motions brought to her attention**

SUPPORTING FACTS:  1) motion to declare ohio revised code unconstitutionally vague & therefore void, ohio's aggravated murder statue r.c. 2903.0l (a) unconstitutionally vague on it's face. (as applied to petitioners case contrary to the 6th(trial by jury)8th and 14th amendments, not to be convicted "unless-every" element  is proven beyond a reasonable doubt) jurisprudence.      2)motion to dismiss count three, * * * kidnapping, because no kidnapping took place by defendant as decedent came to west 38th on his own volition & was not withheld, restrained, nor aided or abetted neither harmed by defendant. * * * 3) motion to suppress george church's statement due to it's reliability and likelihood to prejudice defendant defense and violate his right to due process and fair trial. As shown in trial, church's false testimony & false eyewitness account led to a wrongful conviction * * *  4) motion to keep inference being stacked upon inferences, which

15

at least caused unfairness of unnecessarily requiring the jury to lose its way. * * *

**4.      Ineffective assistance of counsel, refusal to get eyewitness expert and experts on blood splatter.**

SUPPORTING FACTS: It is physically impossible for the account have happened as it was relayed by george church. I can say without a doubt if these experts were available that a not guilty verdict would have been the only outcome based upon church's false testimony. With an eyewitness expert defendant(Drummond) could have clearly established that from where boles, church & young claimed to have been & claimed to have seen it would have been physically impossible. This could have & should have been explained to the jury. There is "no way" possible that these three eyewitness account is credible & therefore should be void & reversed . It can be proven that where the victim was located, boles & young could not have seen anyone by him before or after his death. It can be proven, from physical evidence from the coroner that george church gave a false eyewitness account. * * *

**5.      [R]ediscovered evidence**

SUPPORTING FACTS. it was not brought up at trial that not only was said evidence supposed to have been"lost & destroyed" due to a flood, but there was no mention of a 357 revolver being lost in said flood. A gun just "don't  float away". And this gun still haven't been found. As it's been pocketed(stolen)or probably put back on the streets. The rediscovered evidence is still missing videotaped statements. Unfortunately . For sure these videotaped statements "would have" impeached witnesses boles & young.  Because what they said on the stand (in 2013) is different than what they said in their initial statements back in "97" & det, cleveland vouched for these statements saying that they were the same from back in 1997(when they were not). * * *

**6.      Selective, vindictive & malicious prosecution**.

SUPPORTING FACTS:  When this case was indicted det. Cleveland stated to the"grand jury" that they did not know who committed this crime.  So with that being said, at the Apr,22,2013 pre indictment delay hearing, attorney general paul scarsella & brian deckert approached church's, boles, evans, jones, & weavers lawyers & said to the lawyers that they "only want Drummond" for said reasons this issue has been established.  The Sixth Circuit recognizes a federal claim of malicious prosecution under the Fourth Amendment where a plaintiff alleges that the defendants wrongfully investigated, prosecuted , convicted and incarcerated him.  Thacker v. Citv of Columbus, 328 F.3d 244. 258-59 (6th Cir. 2003)(citing Spurlock v. Satterfield. 167 F.3d 995, 1005-07 (6th Cir. 1999)). To satisfy a malicious prosecution claim, at a minimum, a plaintiff must show that there was no probable cause to justify the prosecution.

7.        **Ineffective assistance of counsel**

SUPPORTING FACTS:  The death of a potential witness during the pre-indictment period can constitute prejudice, but only if the defendant can identify exculpatory evidence that was lost and show that the exculpatory evidence could not be obtained by other means.  Rogers, 118 F.3d at 475. pre indictment prejudiced was shown due to exculpatory evidence being lost/withheld/hidden and could not be obtained by other means. Det. Pouska was the initial lead det.  On this case.  He passed away in 2006, the exculpatory that was lost with his passing away are the statements that were made by boles, young & church back in 1997. these three testified differently to the statements that they gave to det. Pouska. There was a story concocted by det. Cleveland that this evidence & videotaped statements from 2003 were lost & destroyed. Unfortunately these videotaped statements are still being withheld/hidden.

(Doc. No. 38.)  Drummond offers no explanation for failing to assert these claims in the original

Petition.

Respondent filed a brief in opposition, arguing leave to amend should be denied for

several reasons.  (Doc. No. 39.)  First, Respondent notes Drummond failed to file a motion

seeking leave to amend his petition and argues a Traverse is not the proper pleading for raising

new grounds for relief.  (*Id*. at 1-2.)  Even if Drummond's "Amended Petition/Traverse" were

construed as a Motion for Leave to Amend, Respondent argues such motion should be denied

"because of Drummond's undue delay and because any amendment would be futile."  (*Id*. at 3.)

Specifically, Respondent argues amendment would be futile because Drummond's new claims

do not relate back to the original petition and, therefore, are time-barred under 28 U.S.C. §

2244(d)(1)(A).  (*Id*. at 3-4.)  Second, Respondent asserts Drummond's new claims are

procedurally defaulted because none of them were raised or exhausted in state court.  (*Id*. at 4.)

Third, Respondent notes Drummond's proposed malicious prosecution claim is not cognizable

on federal habeas review.  (*Id.*)  Finally, Respondent asserts "any amendment would be futile

because the concurrent sentence doctrine allows this Court to decline to decide the instant

17

petition." (*Id*. at 4-5.)

It is well established that Rule 15 of the Federal Rules of Civil Procedure applies to a habeas petitioner's request for leave to amend his petition. *Mayle v. Felix*, 545 U.S. 644, 655 (2005). *See also Glenn v. Coleman*, 2014 WL 4983661 at * 5 (N.D. Ohio Oct. 6, 2014); *Shank v. Mitchell*, 2013 WL 3208554 at *3 (S.D. Ohio June 24, 2013). Under Rule 15(a), a party may amend his or her pleadings once as a matter of course at any time before a responsive pleading is served. Fed. R. Civ. P. 15. Otherwise, the party may amend only with the opposing party's written consent or by leave of court, which "shall be freely given when justice so requires." *Id*. *See also Mayle*, 545 U.S. at 655.

As Respondent has already filed her Answer/Return of Writ, leave of court must be obtained before Drummond may amend his Petition. In determining whether leave should be granted, a habeas court should consider several factors, including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir.1998) (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir.1994.)) *See also Powers v. Beightler*, 2010 WL 649623 at * 1 (N.D. Ohio Feb. 19, 2010). If a proposed amendment lacks merit on its face, it is deemed futile. *See e.g., Moss v. United States,* 323 F.3d 445, 475 (6th Cir. 2003). In the Sixth Circuit, leave to amend a pleading may be denied on grounds of futility only if the amended pleading would not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Kottmyer v. Maas*, 436 F.3d 684, 691–92 (6th Cir. 2006); *Hall v. Clipper*, 2011 WL 2671310 at * 11 (N.D. Ohio July 8, 2011).

Drummond's request to amend his Petition to raise the seven new claims set forth above is denied for the following reasons.  As an initial matter, Drummond previously requested to amend his petition to raise several of the same claims he now seeks to add; i.e., his ineffective assistance of counsel, "tainted juror," and "rediscovered evidence" claims.  (Doc. No. 30.)  As noted above, this Court expressly considered and denied Drummond's request in an Order dated June 19, 2017.  (Doc. No. 35.)  In that Order, the Court denied Drummond leave to amend because (1) he failed to adequately explain how any of the rediscovered evidence supports his proposed claims; and (2) amendment "at this late stage of the proceedings" would cause undue prejudice to the Respondent.  (*Id.*)

Drummond's "Amended Petition/Traverse" offers no reason to cause this Court to reconsider its previous ruling.  Drummond fails to meaningfully explain how the rediscovered evidence supports his proposed claims or otherwise articulate why he failed to raise these claims in his original Petition.  In this regard, the Court notes the majority of Drummond's new claims as set forth in the "Amended Petition/Traverse" involve matters that would have been known to Drummond at the time of trial, such as his ineffective assistance of counsel claims based on counsel's failure to object to "tainted jurors," file certain pre-trial motions, and obtain expert testimony.  Drummond provides no explanation for his failure to raise these claims when the Petition was initially filed, nearly two years ago.  Under these circumstances, the Court finds Drummond's unexplained delay in asserting these claims to be both undue and prejudicial.

Leave to amend is denied for the additional reason that each of the seven claims Drummond now seeks to raise are unexhausted and/or procedurally defaulted.  As Respondent correctly notes, the record reflects Drummond failed to raise any of these grounds in the state

19

courts. Indeed, Drummond failed to raise any of his proposed claims on direct appeal to the state appellate court and/or the Supreme Court of Ohio. Moreover, the state court docket reflects that, despite having had the "rediscovered evidence" since September 2015 and appointed counsel for purposes of post-conviction proceedings since October 2016, there is still no post-conviction petition or other motion relating to this rediscovered evidence currently pending before the state trial court.

Accordingly, and for all the reasons set forth above, Drummond's request to amend his Petition is denied.

## IV. Concurrent Sentence Doctrine

In her "Opposition to Petitioner's Amended Traverse," Respondent argues, for the first time, that "this Court may not grant habeas relief on the 2013 conviction from Ashtabula County, Ohio, that Drummond challenges in the instant petition because he is also serving a death sentence from a separate conviction for aggravated murder in Mahoning County, Ohio." (Doc. No. 39 at 4-5.) Respondent maintains Drummond's execution date has been set in his capital case and argues "this death sentence is controlling and Drummond has failed to allege any collateral consequences to the conviction he currently challenges." (*Id*. at 5.) Thus, Respondent asserts "the concurrent sentence doctrine allows this Court to decline to decide the instant petition." (*Id.*)

Drummond urges the Court to reject application of the concurrent sentence doctrine, arguing as follows:

> Drummond is responding to the government saying that they do not have to answer this appeal due to the concurrent sentence doctrine. The courts are saying that they do not have to answer the 2013 conviction out of Ashtabula County, oh due to petitioner being already imprisoned on a death penalty case.

At the time in 2013 the government didn't care nothing about that (concurrent sentence doctrine). The attorney generals office are the ones that's handling the paper work for the death penalty case. And the attorney generals office are the ones that chose to charge me & prosecute me in 2013 from a crime stemming from 1997 that I did not commit. The courts are always trying to have it their way. First you prosecute me for a crime. then when I go to trial you tell me that you don't have to answer this appeal. The state can't have it both ways. I have the right to appeal this wrongful conviction.

(Doc. No. 40 at 1.)

The Sixth Circuit has explained the concurrent sentence doctrine, in the context of

federal habeas proceedings, as follows:

According to this doctrine, which has been accepted by this Court, a [habeas] court may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction. *See United States v. Jeter*, 775 F.2d 670 (6th Cir.1985), *cert. denied*, 475 U.S. 1142, 106 S.Ct. 1796, 90 L.Ed.2d 341 (1986).

Although the Court has been admittedly hesitant to apply this doctrine, *United States v. Greer*, 588 F.2d 1151, 1154 (6th Cir.1978), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979), citing *Hibdon v. United States*, 204 F.2d 834, 839 (6th Cir.1953), it has invoked it when there is no possibility of adverse "collateral consequences" if the convictions stand. *United States v. Von Stewart*, No. 84-1084, unpub. op., 782 F.2d 1044 (6th Cir.1985), citing *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *United States v. Maze*, 468 F.2d 529 (6th Cir.1972).

*Winn v. Renico*, 175 Fed. Appx. 728, 731-732 (6th Cir. May 12, 2006).[3] *See also Dale v.*

---

[3] As another district court within this Circuit explained, "[t]he doctrine has it's origins in appellate practice applicable to direct review of criminal cases. *See Benton v. Maryland*, 395 U.S. 784, 788–91, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Hirabayashi v. United States*, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943). In these cases, the Supreme Court and the Sixth Circuit have declined to review convictions on one count where the presence of a valid concurrent count is sufficient to retain the defendant in custody. *See, e.g., Hirabayashi*, 320 U.S. at 105; *United States v. Burkhart*, 529 F.2d 168, 169 (6th Cir.1976)." *Pena v. Prelesnik*, 2014 WL 295159 at * 19 (W.D. Mich. Jan. 24, 2014). The *Pena* court further noted as follows: "Although the doctrine has its roots in direct appeals, the federal courts routinely apply it in habeas corpus actions, citing the futility of reviewing a conviction that will not

*Haeberlin*, 878 F.2d 930, fn 3 (6th Cir. 1989); *Wilkens v. Lafler*, 487 Fed. Appx. 983, 986-987

(6th Cir. July 6, 2012). "The types of adverse consequence that can prevent the doctrine from

applying include an effect on parole or a potential pardon, the existence of state recidivist

statutes, the possibility of impeachment at a future trial, the potential for use as evidence of a

prior bad act, and possible stigma." *Pillette v. Berghuis*, 408 Fed. Appx. 873, fn 8 (6th Cir. Oct.

28, 2010) (citing *United States v. Vargas*, 615 F.2d 952, 959–60 (2d Cir.1980) and *Sanders v.

Sullivan*, 863 F.2d 218, 226 n. 8 (2d Cir.1988)). *See also Thomas v. Woods*, 2016 WL 3186734

at * 2 (W.D. Mich. June 8, 2016) (dismissing habeas petition under the concurrent sentence

doctrine where petitioner challenged his 2012 murder conviction which resulted in a sentence of

imprisonment for life without parole, while also serving a mandatory life sentence as a result of

a 1976 first degree murder conviction).

The concurrent sentence doctrine is a discretionary one. *See Pillette*, 408 Fed. Appx. at

fn 8; *Becker v. Curley*, 2013 WL 4409347 at * 10 (E.D. Mich. July 29, 2013); *Willis v. Harry*,

2013 WL 791519 at * 4 (E.D. Mich. March 4, 2013). "The Court should presume that

petitioner's conviction carries adverse collateral consequences, *see Wilson [v. Straub]*, 185

F.Supp.2d [766,] 769–70 (E.D. Mich. 2002)] (citing *Sibron v. New York*, 392 U.S. 40, 55

(1968)); *see also, Spencer v. Kemna*, 523 U.S. 1, 8–9, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)

(noting that the Court generally presumes that a criminal conviction carries adverse collateral

---

result in a petitioner's release from custody. *See, e.g., Cranmer v. Chapleau*, No. 95–6508,
1996 WL 465025 (6th Cir. Aug.13, 1996); *Scott v. Louisiana*, 934 F.2d 631, 635 (5th
Cir.1991); *Williams v. Maggio*, 714 F.2d 554 (5th Cir.1983); *VanGeldern v. Field*, 498 F.2d
400, 403 (9th Cir.1974). In habeas actions, as in direct review, the exercise of the court's
discretion depends upon the degree of prejudice that may be attributed to the challenged
conviction and, specifically, the effect of any adverse collateral consequence if the
conviction is allowed to stand." *Pena*, 2014 WL 295159 at * 20.

22

consequences beyond the sentence imposed), and respondent bears a heavy 'burden of showing that the risk of collateral consequences is too slight to justify review.'" *Becker*, 2013 WL 4409347 at * 10 (quoting *Suarez v. Bennett*, 207 Fed. Appx. 114, 115 (2d Cir.2006)).

The record reflects that, in 2004, Drummond was convicted and sentenced to death for the aggravated murder of a three-month old girl after he fired an assault rifle in her home.  The Ohio Supreme Court affirmed his conviction, after which he sought federal habeas relief in this Court.  On December 31, 2010, this Court granted Drummond's habeas petition in part, on the ground the trial court violated Drummond's Sixth Amendment rights when it partially closed the courtroom for the testimony of three witnesses during his trial.  *See Drummond v. Houk*, 761 F.Supp.2d 638 (N.D. Ohio 2010).  A divided panel of the Sixth Circuit affirmed.  *See Drummond v. Houk*, 728 F.3d 520 (6th Cir. 2013).  The United States Supreme Court thereafter vacated the Sixth Circuit's decision and remanded for reconsideration in light of *White v. Woodall*, 134 S.Ct. 1697 (2014).  *See Robinson v. Drummond*, 134 S.Ct. 1934 (2014).  On remand, the Sixth Circuit determined the partial closure of the courtroom during testimony of prosecution witnesses did not violate Drummond's constitutional rights, and reversed the grant of habeas relief.  *See Drummond v. Houk*, 797 F.3d 400 (6th Cir. 2015).  The United States Supreme Court denied certiorari on May 19, 2016.  *See Drummond v. Houk*, Case No. 4:07CV1776 (N.D. Ohio) (Doc. No. 121.)  According to the Ohio Department of Rehabilitation & Correction website, the State has set an execution date for Drummond of April 21, 2022.  *See* www.drc.ohio.gov/execution-schedule.

As noted above, the Sixth Circuit has invoked the concurrent sentence doctrine only when there is "*no possibility*" of adverse collateral consequences if the conviction at issue

23

stands.  *See Winn*, 176 Fed. Appx. at 731-732 (emphasis added).  *See also Dale*, 878 F.2d at fn

3; *Wilkens*, 487 Fed. Appx.at 986-987.   Here, it cannot be said there is "no possibility of

adverse 'collateral consequences.'"  While Respondent asserts Drummond has exhausted his

state and federal court appeals relating to his state court capital conviction,[4] and an execution

date has been set by the State of Ohio, it is possible he may elect to seek clemency with respect

to his capital conviction, in accordance with state law and procedure.[5]  There is a possibility,

however slight, the existence of the state court conviction challenged herein (i.e., Drummond's

2013 Ashtabula County conviction) might be one factor taken into consideration as part of any

potential future clemency proceedings.[6]

Accordingly, and in light of the Sixth Circuit's admonition the concurrent sentence

---

[4] The Court notes, in January 2017, Drummond filed a Petition to Vacate or Set Aside Sentence in the state trial court in connection with his underlying capital conviction.  *See* Docket Sheet for *State of Ohio v. Drummond*, Mahoning County Court of Common Pleas Case No. 2003 CR 358.  The State of Ohio thereafter filed a Motion to Dismiss, which Drummond opposed. *Id*.  On September 11, 2017, the state court docket reflects a "warrant of reprieve" was received from the Ohio Department of Rehabilitation & Correction indicating Drummond's death sentence was reprieved until April 21, 2022. *Id*.  As of the date of this Order, Drummond's Petition to Vacate and the State of Ohio's Motion to Dismiss both remain pending in state court.

[5]  "Executive Clemency is an act of mercy or leniency from certain consequences of a criminal conviction, and is exercised by the Governor after receipt of a recommendation from the Parole Board." *See* www.drc.ohio.gov/clemency.  "Ohio Revised Code (ORC) Section 2967.07 requires that all applications for clemency be made in writing to the Adult Parole Authority. The Governor may also direct the Parole Board to investigate and examine any case for the propriety of clemency." *Id.*

[6] *See* State of Ohio Department of Rehabilitation and Correction, Clemency Procedure: Death Penalty Cases, Policy No. 105-PBD-01 at pg. 3 (eff. June 12, 2014) (in context of the State of Ohio's Clemency procedure for death penalty cases, stating the Parole Board shall request a report that includes information regarding a death row inmate's complete arrest record, prior institutional and parole and/or probation supervision history, and social history).

doctrine be applied only when there is "*no possibility*" of adverse collateral consequences,[7] it is recommended the Court reject Respondent's argument the Court should decline review of the instant petition under the concurrent sentence doctrine.  *See Pillette*, 408 Fed. Appx. at fn 8 (explaining "[t]he types of adverse consequence that can prevent the doctrine from applying include an effect on . . . a potential pardon . . . ")

### V.  Exhaustion and Procedural Default

**A.      Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways.

---

[7] The Court notes Respondent does not address this issue in her "Opposition."  Rather, Respondent states only that Drummond "fails to allege any collateral consequences to the conviction he currently challenges."  (Doc. No. 39 at 5.)  This is disingenuous, however, for two reasons.  First, Respondent failed to raise this issue at any previous point in these proceedings, addressing it for the first time in her August 2017 Opposition to Drummond's "Amended Petition/Traverse."  Second, and as noted above, Respondent bears the "heavy burden of showing that the risk of collateral consequences is too slight to justify review.'"  *Becker*, 2013 WL 4409347 at *10.

*Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[8] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d at 295 ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused

---

[8] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

26

with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d

at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749–50 (1991). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

**B.      Application to Petitioner– Grounds One through Four**

Respondent argues all four of Drummond's grounds for relief are procedurally defaulted

because, although he raised them on direct appeal to the state appellate court, Drummond failed

to timely appeal to the Supreme Court of Ohio and leave to file a delayed appeal was denied.

(Doc. No. 16 at 22.)  Respondent further maintains Drummond has failed to show either cause

or prejudice to excuse the default.  (*Id*. at 22-24.)

Drummond fails to address the issue of procedural default in either his Petition,

Traverse, or "Amended Petition/Traverse."  (Doc. Nos. 1, 31, 38.)

Drummond's first ground relief asserts a due process violation based on pre-indictment

delay.  His second ground for relief asserts a sufficiency of the evidence claim.  Drummond's

third ground for relief asserts the state trial court erred in failing to give an adverse inference

instruction based on the alleged spoliation of evidence.  Finally, Drummond's fourth ground for

relief alleges his convictions are against the manifest weight of the evidence.  (Doc. No. 1.)

As set forth *supra*, Drummond raised each of the above claims on direct appeal to the

state appellate court.  (Doc. No. 16-1, Exh. 18.)  The state appellate court affirmed Drummond's

conviction and sentence on March 16, 2015.  (Doc. No. 16-1, Exh. 20.)  Drummond failed to

timely appeal to the Supreme Court of Ohio and, instead, filed a motion for leave to file a

delayed appeal on May 4, 2015.  (Doc. No. 16-1, Exhs. 21, 22.)  On June 24, 2015, the Supreme

Court of Ohio denied Drummond's motion for leave to file a delayed appeal and dismissed the

case.  (Doc. No. 16-1, Exh. 23.)

Under its procedural rules, the Ohio Supreme Court has jurisdiction over timely appeals

which are made within 45 days of the state appellate court's decision.  *See* Ohio S.Ct.Prac.R.

6.01(A)(1) & 7.01(A)(1).  The Ohio Supreme Court may, in its discretion, take jurisdiction over

untimely felony appeals upon motion for leave to file a delayed appeal pursuant to Ohio

S.Ct.Prac .R. 7.01(A)(4).  However, where (as here) the delayed appeal is not allowed, the Sixth

Circuit Court of Appeals has held that even an unexplained decision denying leave to file an

untimely appeal is presumed to enforce any applicable procedural bar:

> This case turns upon whether the Ohio Supreme Court entry denying Bonilla's
> motion for leave to file a delayed appeal constitutes a procedural ruling sufficient
> to bar federal court review of Bonilla's habeas corpus petition. Upon examination
> of the Ohio Supreme Court Rules, we conclude that it does. The Ohio Supreme
> Court Rules require a motion for a delayed appeal to state "the date of entry of the
> judgment being appealed and adequate reasons for the delay." Ohio Sup.Ct. R. II,
> Section 2(A)(4)(a). In addition, the motion must be accompanied by a supporting
> affidavit and a "copy of the decision being appealed." *Id*.  A motion for a delayed
> appeal is not required to contain the actual claims and supporting arguments sought
> to be presented on appeal.  *Id*.  Instead, only when "the Supreme Court grants a
> motion for delayed appeal," is the appellant required to "file a memorandum in
> support of jurisdiction." Ohio Sup.Ct. R. II, Section 2(A)(4) (c). **Thus, the
> applicable Ohio court rules indicate that the denial of a motion for a delayed
> appeal is a procedural ruling, not a ruling on the merits.**

*Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004)(emphasis added); *accord Baker v.

Bradshaw*, 495 Fed. App'x. 560, 565 (6th Cir.2012) ("the timeliness requirements for an appeal

to the Ohio Supreme Court ... constitute adequate and independent state grounds to preclude

hearing an untimely claim on the merits."); *Carman v. Ohio*, 2015 WL 1189084 (N.D. Ohio

Mar. 16, 2015); *Crutchfield v. Warden*, 2014 WL 3899287 (S.D. Ohio Aug. 11, 2014) (finding

that where the petitioner's motion for delayed appeal before the Ohio Supreme Court was

denied, the petitioner must demonstrate cause for his default and actual prejudice to avoid

dismissal).

 The Court finds Drummond's failure to file a timely appeal from the March 16, 2015

state appellate court decision to the Ohio Supreme Court, coupled with the Ohio Supreme

Court's denial of a motion for delayed appeal, resulted in a procedural default.[9] Therefore, Grounds One through Four are procedurally barred unless Drummond "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  A habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488, and if the petitioner fails to do so, the Court need not consider the prejudice prong.  *Smith v. Murray*, 477 U.S. 527, 533–34, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

Drummond does not offer any argument that there is cause or prejudice to excuse the default of these claims.[10]  He does argue, generally and at length, that he is actually innocent.

---

[9] As noted above, Drummond fails to address the issue of procedural default in either his Petition, Traverse, or "Amended Petition/Traverse."  Moreover, Drummond does not argue his claims are not defaulted because the state appellate court issued a judgment entry on June 5, 2015 substituting the 21st page of the March 2015 opinion.  In the Return, Respondent argues Drummond's appeal from the June 5, 2015 judgment entry does not demonstrate he properly exhausted his claims because that entry did not make any substantive change to the state appellate court's original decision; rather, it simply deleted a citation on the 21st page of the original opinion.  The Court agrees.  In the June 5, 2015 judgment entry, the state appellate court does not vacate and reissue its previous opinion, but instead cites an "inadvertent error in this court's 21st page of the opinion of March 16, 2015," and *sua sponte* orders the "21st page of the opinion of March 16, 2015 be stricken" and substituted with the attached 21st page.  (Doc. No. 16-1, Exh. 24.)  As Respondent correctly notes, the new 21st page makes no substantive change to the opinion whatsoever.  Drummond does not argue, and cites no authority for the proposition that, under these circumstances, the state appellate court's June 5, 2015 entry would restart the time to file a direct appeal under Ohio law.

[10] The Court notes that, in his motion for leave to file a delayed appeal, Drummond explained he failed to timely appeal the state appellate court's decision because "[n]o appointment was made to appeal this matter to this Court" and "[t]he appellant was unable to pay the filing fee." (Doc. No. 16-1, Exh. 22.)  Drummond does not argue in these proceedings, however, the lack of counsel or inability to pay the filing fee constitutes cause to excuse the default of his habeas claims.  Regardless, Drummond's first reason– that he failed to timely appeal because he was not appointed counsel– is without merit as it is well-established there is no

As noted above, a petitioner's procedural default may be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749–50. In order to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. *See also Jones*, 489 F. Supp.2d at 807; *Allen*, 2012 WL 3711552 at * 7. A petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *See Schlup*, 513 U.S. at 327. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id*. at 316.

Here, while Drummond repeatedly asserts he is innocent, he fails to support this allegation with any new, reliable evidence that was not presented at trial. Rather, Drummond's arguments in this regard revolve primarily around "lost evidence" he believes would have

---

constitutional right to counsel in a direct appeal to the Ohio Supreme Court. *See Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), *Depinet v. Bunting*, 2015 WL 5675076 at * 7 (N.D. Ohio Sept. 25, 2015). Drummond's second reason– that he was unable to pay the filing fee-- is equally unavailing. Ohio S.Ct.Prac.R. 3.06(A) provides "[a]n affidavit of indigence may be filed in lieu of filing fees or security deposits." Drummond offers no explanation for his failure to submit an affidavit of indigence in lieu of a filing fee pursuant to this Rule. Thus, and in the absence of any argument to the contrary, the reasons offered in Drummond's motion for leave to file delayed appeal would not constitute cause to excuse the default of his habeas claims. Moreover, in the absence of cause, a court need not reach the issue of prejudice. *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000); *Sandridge v. Buchanan*, 2017 WL 2255378 at * 11 (N.D. Ohio April 27, 2017).

impeached the forensic evidence and witness testimony against him, including the missing forensic evidence described in the state appellate court opinion and the 2003 videotaped statements of George Church and Stephen Boles.  Drummond also argues, at length, that he has been severely prejudiced by the unavailability of former lead investigator Detective Pouska and forensic scientist Nancy Bulger, both of whose testimony (he believes) would have cast doubt on the evidence presented against him at trial.

The "lost evidence" cited by Drummond, however, does not constitute new, reliable evidence for purposes of satisfying the actual innocence exception to procedural default.  As Drummond himself repeatedly notes, the evidence he relies on is lost and, therefore, not available for review.  Thus, it is not possible for this Court to determine whether it is reliable or of such a character that "it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt."  *See Schlup*, 513 U.S. at 327.  In sum, Drummond's reliance on this "lost evidence" is speculative and insufficient to carry his burden of demonstrating actual innocence.

In his various Motions to Stay, Drummond asserted some of the missing evidence in his case was "rediscovered" in 2015, two years after his conviction.  (Doc. Nos. 23, 30.) Attachments to Drummond's motion appear to show that, in April 2015, "a box containing evidence which had been processed by outside laboratories" was discovered by the Ashtabula City Police Department.  (Doc. No. 30-1 at 3.)  Among other things, this box contained "pieces of evidence from" Drummond's underlying state court criminal case.  (*Id*.)  Detective Taylor Cleveland of the Ashtabula County Sheriff's Office took custody of the evidence relating to Drummond's case, catalogued it, photographed each piece, and apparently downloaded the

information to a disc.  (Doc. No. 30-1 at 3, Doc. No. 23-1 at 4.)  According to materials attached to Drummond's motions to stay, this evidence consisted of 20 pieces of evidence,[11] each of which was apparently tested by either BCI or the Cuyahoga County Coroner.  (Doc. No. 23-1 at 6-10.)

To the extent Drummond is asserting this "rediscovered" evidence supports his claim of actual innocence, this argument is without merit.  Despite multiple opportunities to do so, Drummond has failed to articulate the relevance of the "rediscovered" evidence to any of his pending habeas claims.  He does not sufficiently explain the importance or provide the results (if any) of the laboratory analysis of the "rediscovered" evidence noted above.  Nor does he meaningfully discuss how this evidence either relates to his claims or demonstrates he is innocent of the conviction he is now challenging.  Under these circumstances, the Court finds the "rediscovered evidence" noted above is insufficient to satisfy the actual innocence exception.[12]

Therefore, the Court finds Drummond has failed to demonstrate the procedural default

---

[11] This evidence is described as follows: "1) made by 'goony' afro pick; (2) piece of carpet with possible blood on it; (3) piece of carpet with hole in it; (4) copper jacket from bullet; (5) slug from living room under item 3; (6) blood spots on sidewalk; (7) control swab from item #1; (8) blood spots from leaves and grass; (9) control swab from item #5; (10) blood spot on grass; (11) control swab from item #6; (12) spent casing possible 9 mm; (13) spent casing possible 9 mm; (14) envelope with blood from victim on ground; (15) control swab from item #12; (16) blood swab from brick at 1017 W.38th (east of door); (17) control swab from #12b; (18) blood swab from screen door of 1017 W. 38th; (19) control swab from item #13; and (20) projectiles removed from Hull's body/clothing of Hull."  (Doc. No. 23-1 at 9.)

[12] Notably, the state court docket continues to reflect that no post-conviction motions have been filed in the state trial court regarding the "rediscovered evidence," despite the fact that it was provided to Drummond in September 2015 and counsel was appointed by the state court in October 2016.

of Grounds One, Two, Three, and Four should be excused on the basis of actual innocence. Accordingly, and for all the reasons set forth above, it is recommended Grounds One, Two, Three, and Four be DISMISSED as procedurally defaulted.[13]

## VI. Request for Evidentiary Hearing and Expert Assistance

In his Response to Respondent's Opposition to Petitioner's Amended Petition/Traverse, Drummond requests an evidentiary hearing and that "experts be appointed, an eyewitness expert, and a pathologist expert." (Doc. No. 40 at 3.) He does not advance any further argument or explanation as to this request.

"[A] district court shall not hold an evidentiary hearing on a habeas claim unless the petitioner, who failed to develop the factual basis of the claim in state court, 'shows that the claim relies on a factual predicate that could not have been previously discovered through the exercise of due diligence.'" *Freeman v. Trombley*, 483 Fed. App'x 51, 66 (6th Cir. 2012) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)). "Diligence for purposes of § 2254(e)(2) depends on 'whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.' " *Robinson v. Howes*, 663 F.3d 819, 824 (6th Cir. 2012) (quoting *McAdoo v. Elo*, 365 F.3d 487, 500 (6th Cir.2004)).

The Court finds Drummond has failed to provide any basis for an evidentiary hearing. He has not provided any meaningful argument supporting this request. Specifically, Drummond has not specified what evidence or testimony he would present, nor has he provided any argument which demonstrates why an evidentiary hearing is required.

---

[13] Because the undersigned has recommended Drummond's habeas claims be dismissed as procedurally defaulted, this Report& Recommendation does not address the merits of these claims.

For similar reasons, the Court denies Drummond's request for the appointment of expert witnesses.  Drummond has not articulated the basis for his request or demonstrated expert assistance is warranted under the facts and circumstances presented herein.

Accordingly, it is recommended the Court find neither an evidentiary hearing or the appointment of expert witnesses is warranted and deny Drummond's request for the same.

### VII. Conclusion

For all the reasons set forth above, it is recommended the Petition be DISMISSED.

Date:   March 9, 2018                                    _s/ Jonathan Greenberg_____
                                                         Jonathan D. Greenberg
                                                         United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  _See United States v. Walters_, 638 F.2d 947 (6th Cir. 1981); _Thomas v. Arn_, 474 U.S. 140 (1985), _reh'g denied_, 474 U.S. 1111 (1986).**